IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE USED BY CRAIG WHITFIELD | UNDER SEAL<br><br>3:23-sw- 74 |



FILED
May 17 2023
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Detective **Enzo Baia,** being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number 347-653-6901 (the "Target Cellular Device"), which is described in Attachment A.

2. I am an FBI task force officer and a member within the City of Mount Vernon Police Officer. I have been with the FBI task force for three years and have been an officer with the City of Mount Vernon Police Department for twenty-four years. During my law enforcement employment, I have investigated numerous crimes including homicides, assaults, robberies, weapons and armed offenses, and fugitives. As part of these investigations, I have obtained numerous arrest and search warrants. I have experience in obtaining court orders and search warrants for telecommunication devices to investigate crimes and locate fugitives. I am aware of the current laws and policies governing the monitoring of telecommunications devices and social media accounts.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     One purpose of applying for this warrant is to determine with precision the Target Cellular Device's location.

5.     Based upon the facts set forth in this affidavit there is probable cause to believe defendant has violated 18 U.S.C. § 1073 (Unlawful Flight from Prosecution). The underlying charges from which Whitfield is fleeing are Attempted Murder in the Second Degree, in violation of New York State Penal Law 110/125.25(1), Attempted Assault in the First Degree, in violation of New York State Penal Law 110/120.10(1), Assault in the Second Degree, in violation of New York State Penal Law 120.05(2), and Criminal Possession of a Firearm. The Mount Vernon Police Department (MVPD), the Federal Bureau of Investigation (FBI), FBI Westchester County Safe Streets Task Force, New York State Department of Parole, and members of the Westchester County District Attorney's Office (WCDAO) are conducting a joint criminal investigation into the illegal possession of a handgun, shooting, attempted murder, and assault with a handgun believed to have occurred in the City of Mount Vernon, County of Westchester, State of New York, and a continuing illegal possession of a handgun in said areas.

6.     Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1). Consistent with the requirement for an

application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by FBI. *See* 18 U.S.C. §§ 3122(b), 3123(b).

## PROBABLE CAUSE

7. This affidavit is made upon personal knowledge and information and belief, the sources of which are the following:

    a. conversations with and certain files maintained by members of the Mount Vernon Police Department, Federal Bureau of Investigations, FBI Westchester County Safe Streets Task Force, New York State Department of Parole, and the Westchester County District Attorney's Office;
    b. conversations with witnesses as discussed within;
    c. records of the New York State Department of Criminal Justice Services (hereinafter "NYS DCJS");
    d. other sources as indicated.

8. On the basis of the facts set forth in this affidavit, I have concluded that there is probable cause to believe that Craig Whitfield (DOB: 08/09/1974) (Whitfield) has committed the offense of Unlawful Flight from Prosecution in violation of 18 U.S.C. § 1073, and that the above-captioned cellular telephone has been used, is being used, and will continue to be used by Whitfield.

9. Whitfield has been charged in New York state court with Attempted Murder in the Second Degree, in violation of New York State Penal Law 110/125.25(1), Attempted Assault in the First Degree, in violation of New York State Penal Law 110/120.10(1), Assault in the Second Degree, in violation of New York State Penal Law 120.05(2) and has committed, is committing, and will continue to commit the offense of Criminal Possession of a Weapon in the Second Degree, in violation of New York State Penal Law Section 265.03(1).

10. The identity of the individual believed to possess and use the above-captioned cellular telephone is Craig Whitfield, the subject of this investigation.

11. There is an active NY state warrant pending for Whitfield for, inter alia, Attempted Murder in the Second Degree, and evidence indicates that Whitfield is in Petersburg, Virginia. Thus, there is probable cause to believe Whitfield is in violation of 18 U.S.C. § 1073 (Flight to Avoid Prosecution).

12. My review of New York State criminal history records reveals that Whitfield pled guilty on May 16, 2019 to Manslaughter in the First Degree, in violation of New York Penal Law Section 125.25(1), in the Bronx County Supreme Court, and was sentenced to ten (10) years of incarceration, as well as five (5) years of post-release supervision. As part of that case, Whitfield had also been charged with two counts of Murder in the Second Degree, both Class A violent felonies; four counts of Robbery in the First Degree, all Class B violent felonies; four counts of Robbery in the Second Degree, both Class C violent felonies; two counts of Criminal Possession of a Weapon in the Second Degree, both Class C violent felonies; and one count of Robbery in the Third Degree, a Class D felony. Defendant also has prior history of Criminal Possession of a Weapon in the 2d Degree and Criminal Possession of a Weapon in the 4th Degree charges.

13. My review of New York State criminal history records reveals that on November 12, 2020, Whitfield was released from incarceration to the New York State Department of Parole.

14. I have learned that Veronica Thompson is Whitfield's common law spouse. Veronica Thompson's cellular telephone number is (718) 503-8615.

15. I learned that Keesha Escalara is Whitfield's daughter. Keesha Escalara's cellular telephone number is (347) 832-7556.

16. I have learned that Parole Officer Elvis Gurrero has been Whitfield's Parole Officer and has communicated with Whitfield via cellular telephone on a weekly basis in the past. Officer Gurrero's last communication with Whitfield was in or around January 2023.

17. I learned that Whitfield has utilized cellular telephone number **585-532-1261.** That is the cellular telephone number that Parole Officer Gurrero previously used to communicate and have conversations with Whitfield.

18. I have learned that Whitfield had listed cellular telephone number (585) 532-1261 as the cellular telephone number to be associated with his EBT debit card.

19. I learned that Whitfield gave cellular telephone number (585) 532-1261 to the New York State Department of Parole as the number of a woman he was living with.

20. I learned that Whitfield has contacted the New York State Department of Parole utilizing cellular telephone number (585) 532-1261.

21. I learned that the provider for cellular telephone number (585)-532-1261 is T-MOBILE.

22. Subpoena records have revealed that the T-MOBILE cellular telephone number (585)-532-1261 belongs to an individual known as "Whitfield McWilliams."

23. "McWilliams" is Whitfield's father's last name.

24. Subpoena records have further revealed that the International Mobile Equipment Identify Number (hereinafter "IMEI Number") for T-Mobile cellular telephone number (585) 532-1261 was 359486324155580.

25. Subpoena records reveal multiple phone calls placed between (585) 532-1261 and cellular telephone number (718) 503-8615, known to Your Affiant to be Veronica Thompson's cellular telephone number, between January 2023 and February 2023. Said calls ceased prior to February 14, 2023.

26. Subpoena records reveal multiple phone calls placed between (585) 532-1261 and cellular telephone number (347) 832-7556, known to Your Affiant to be Keesha Escalara's cellular

telephone number, between January 2023 and February 2023. Said calls ceased prior to February 14, 2023.

27. Upon a review of records obtained from T-MOBILE via subpoena, phone calls to and from cellular telephone number (585) 532-1261 to cellular telephone numbers (347) 832-7556 (Keesha Escalara's cellular telephone number) and (718) 503-8615 (Veronica Thompson's cellular telephone number) cease on or about February 14, 2023. Subsequently, cellular telephone number (347) 653-6901 begins to be the common number used to contact both (347) 832-7556 (Keesha Escalara's cellular telephone number) and (718) 503-8615 (Veronica Thompson's cellular telephone number).

28. I learned that the carrier for cellular telephone number (347) 653-6901 is T-MOBILE.

29. I learned that the subscriber listed for cellular telephone number (347) 653-6901 is Edwin Reyes, 527 40th Street, Brooklyn New York 11232.

30. However, a review of the records obtained from T-MOBILE regarding cellular telephone number (347) 653-6901 reveal the same call pattern to cellular telephone numbers (347) 832-7556 (Keesha Escalara's cellular telephone number) and (718) 503-8615 (Veronica Thompson's cellular telephone number), in that multiple, almost daily, calls were made to said numbers, registered to Whitfield's daughter and common law wife, respectively, from cellular telephone number (347) 653-6901 after cellular telephone number (585) 532-1261 ceased calling said numbers.

31. Furthermore, a review of the records obtained from T-MOBILE reveals that the IMEI Number for cellular telephones (585) 532-1261 and (347) 653-6901 to be the same, giving Your Affiant probable cause to believe that Whitfield kept the same physical phone that was associated with cellular telephone number (585) 532-1261 and now uses said phone with it being

associated with cellular telephone number (347) 653-6901.

33. Subpoena records concerning cellular telephone number (347) 653-6901 reveal that said cellular telephone number became associated with IMEI Number 359486324155580 on February 14, 2023, at approximately 4:01 p.m. IMEI Number 359486324155580, now associated with cellular telephone number (347) 653-6901, is the same as that which was previously associated with cellular telephone number (585) 532-1261 prior to February 14, 2023, at approximately 4:01 p.m.

33. I am aware that each IMEI Number is specific to one and only one cellular telephone device. As such, a single cellular telephone device will retain the same IMEI Number even if its cellular telephone number changes, as happened here.

34. Subpoena records concerning cellular telephone number (347) 653-6901 reveal that on February 14, 2023, at approximately 4:01 p.m. (at or about the exact time the new line was activated), cellular telephone number (347) 653-6901 placed an outgoing phone call to cellular telephone number (718) 503-8615, which is known to be Veronica Thompson's cellular telephone number.

35. Subpoena records concerning telephone cellular number (347) 653-6901 reveal that, after February 14, 2023 at approximately 4:01 p.m., said number placed and received almost daily telephone calls to (718) 503-8615, which is known to Your Affiant to be Veronica Thompson's cellular telephone number.

36. Subpoena records concerning telephone cellular number (347) 653-6901 reveal that, after February 14, 2023 at approximately 4:01 p.m., said number placed and received almost daily telephone calls to (347) 832-7556, which known to Your Affiant to be Keesha Escalara's cellular telephone number.

37. Accordingly, I have probable cause to believe Whitfield kept the same physical phone that was associated with cellular telephone number (585) 532-1261 and now uses said phone with it being associated with cellular telephone number (347) 653-6901.

38. The facts and circumstances supplying the probable cause to search and seize the above captioned property are as follows:

39. On Friday April 21, 2023, at approximately 5:27 p.m., members of the MVPD responded to the area of 4 West 3rd Street, in the City of Mount Vernon, County of Westchester, State of New York on a report of shots fired. Christie Tovia was the victim of the shooting.

40. On Sunday April 23, 2023, a flyer was posted on social media with a clear picture of Whitfield, asking for the public's help in identifying the perpetrator of the shooting.

41. On Monday April 24, 2023, the Target Cellular Device pinged off of cellular towers in the Petersburg, Virginia area.

42. Because Whitfield's flight from New York to Virginia was complete within three days of the commission of the crime and within one day of his picture being posted on social media, there is probable cause to believe that Whitfield fled New York to Virginia to avoid prosecution.

43. On April 26, 2023, at approximately 1:30 p.m., Parole Officer Gurrero watched the aforementioned video surveillance and positively identified the aforementioned male who shot Christie Tovia as his parolee, Craig Whitfield (DOB: 08/09/1974).

44. Members of the MVPD have attempted normal investigative procedures, including patrol and surveillance, in order to locate and find Whitfield, but have failed.

45. On April 28, 2023, members of the New York State Department of Parole attempted to locate Craig Whitfield by visiting his last known address on 233rd Street in the

Bronx. While there, said members spoke to a woman who resided there who did not know Whitfield's whereabouts and stated that he (Craig Whitfield) told her that he was no longer on parole. He has not contacted parole since on or about January 2023.

46. Furthermore, given the nature of the commissioned crimes, Whitfield's known gang affiliation, and Whitfield's past commission of a homicide, said normal investigative procedures may prove too dangerous to continue to be employed.

47. On May 17, 2023, at approximately 17:31:35 Greenwich mean time, or 1:31 p.m. Eastern standard time, cellular number 347-653-6901, did register a ping (3,339 meter ping), with the latitude of 37.23105 and -77.35650 longitude. The location of those coordinates is in Petersburg, Virginia.

48. Investigators are on scene in Petersburg and have located the general block from where Whitfield's phone is pinging, but without more precise location information investigators are unable to locate Whitfield.

49. Thus, for the crimes which are the subject of this application I submit this application for an order for the cellular telephone currently assigned number (347) 653-6901, respectively, that is serviced by **T-MOBILE**; and authorizing, without geographical limitations:

    a. the attachment, installation and use of a <u>pen register and trap and trace device</u>, including "Caller ID-Deluxe," for all communications and data usage;
    b. a search of certain <u>Location Information</u>, specifically in the forms of:
        i. all available <u>historical cell site location information</u> on the above-captioned cellular telephones, as well as Per Call Measurement Data (PCMD), Real Time Tool (RTT), NELOS data or their equivalent for the past thirty days from the date of this affirmation;
        ii. obtaining all available <u>prospective location information</u> concerning the Target telephones, including the initiation of any signal needed to determine the location of the Target Cellular Device at such time or intervals directed by the Investigative Agencies, as well as all available:
            1. Precision location information, including GPS data, E-911 Phase II data and latitude-Longitude data and
            2. Cell site data reflecting the cell towers and sectors thereof

        receiving a signal from the Target Cellphone, including Per Call Measurement Data (PCMD), Real Time Tool (RTT), NELOS data or their equivalent; and

c. all available <u>historical Global Positioning System (GPS) location information</u>, often referred to as the "NELOS" report, or any additional data to show the approximate location; and

d. certain subscriber and account information discussed below

## MANNER OF EXECUTION

50. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

51. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

52. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The

device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

53. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

54. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and continue to flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

55. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

56. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

_____
Enzo Baia, Task Force Officer
Federal Bureau of Investigation

Reviewed and approved by AUSA Shea Gibbons

Sworn and attested to me by the Affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on May 17, 2023

_____ /s/ MRC
Honorable Mark R. Colombell
United States Magistrate Judge

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 347-653-6901, whose wireless provider is **T-MOBILE** and whose listed subscriber is Edwin Reyes.

**ATTACHMENT B**

Based on the facts set forth in this Affidavit, because there is probable cause to believe that Whitfield has violated 18 U.S.C. § 1073 (Unlawful Flight from Prosecution), this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).